# EXHIBIT A-8



Paramount Residential Mortgage Group, Inc.

09/03/2021

GEORGE A CALCUT
GERI M CALCUT
6652 E VIRGINIA STREET
MESA, AZ 85215

Hours of Operation:
Customer Service: Monday - Friday,   8:30 AM to 8:00 PM ET
Collections Dept.: Monday - Friday,   8:00 AM to 9:00 PM ET

**Qualified Written Requests, notifications of error, or requests for information concerning your loan must be directed to: PO Box 77423, Ewing, NJ 08628**

RE: Loan Number:
Property Address:         6652 E VIRGINIA STREET
                          MESA, AZ 85215

Dear Borrower(s):

**Congratulations, you are eligible for a Loan Modification, which will permanently change the terms of your mortgage!** If you comply with the terms of the required Trial Period Plan, we will modify your mortgage and may waive all prior late charges that remain unpaid.

The enclosed modification agreement ("Loan Modification Agreement") reflects the proposed terms of your modified mortgage.

**To Accept This Offer:**

- ☑ **Sign** Two (2) copies of all documentation included in the package and send the documents back to us in the enclosed, pre-paid envelope by 09/17/2021. If you do not send both signed copies by the above date, you must contact us if you still wish to be considered for a workout option.
  - o   If any of the Agreement (s) in your package include notary provisions at the end, you must sign all copies before a notary public and return the notarized copies to us.
- ☑ **Make all remaining trial period payments** on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the trial period payment amount required, your mortgage may not be able to be modified. Payments can be made by phone or by mail:

  By Phone: 855-622-3194
  By Mail: Paramount Residential Mortgage Group, Inc.
       425 Phillips Blvd
       Ewing, NJ 08618

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Loan Modification Agreement.

Upon the Modification Agreement becoming binding and effective, the mortgage will be modified to reflect the following terms.

## **LOAN MODIFICATION TERMS**

- **Unpaid Principal Balance**: $255,621.04
- **Modification Note Rate:** 3.375%
- **Date Note Rate is Effective:** 10/01/2021*
- **Deferred Amount:** $0.00
- **Total Amount Capitalized into the Modification:** $5,949.20

The Modified payment breakdown:

- **Principal & Interest:** $1,130.09
- **Escrow:** $215.96
- **New Monthly Payment** (including escrow, if applicable): $1,346.05

Note: Escrow amount is subject to change as taxes and insurance amounts will vary.

The following is a breakdown of the Loan Modification.

## **MODIFICATION TRANSACTION COSTS DUE**

- **Processing Fee:** $0.00
- **Recording Fee:** $0.00
- **Escrow Advance and/or Setup:** $1,585.92
- **Escrow Shortage:** $431.90
- **Late Charges, NSF and/or Other Fees:** $0.00
- **Attorney Fees/costs,** if applicable: $0.00
- **Recoverable Advances,** if applicable: $0.00
- **Accrued Interest,** if applicable: $3,931.38
- **Misc:** $0.00
- **Total Capped Amount:** $5,949.20

Please allow 30 to 45 days for the Loan Modification process to be completed.

NOTE: If applicable, your total mortgage payment may change due to changes in your escrow account.

Should we find any errors or omissions within this final modification package, we will make necessary corrections and re-issue these documents. Failure to sign, notarize and return the corrected final modification package may result in this offer being withdrawn.

Don't delay – take advantage of this great offer by signing, dating and returning all original documents (including all copies) in this letter by 09/17/2021. We encourage you to make copies of all documents for your records.

By Fax: (609) 718-2655

By Mail: Loss Mitigation Department
        PO Box 77408
        Ewing, NJ 08628-6408

Thank you.

Enclosures
LM023 009 PO V10

Required Legal Notice(s)

Please be advised that if the property securing your loan is in a Special Flood Hazard Area (SFHA) and you are approved for a loan modification, you will be required to escrow the minimum amount of coverage required by the Flood Disaster Protection Act of 1973, as amended (42 U.S.C. 4012a). If you are approved for a loan modification, you will be required to acknowledge receipt of the Federal and any State required Flood Insurance Coverage notices. If you currently have flood insurance, there may be an increase in your flood insurance premium. Before completing a modification, you will be required to provide proof of a flood insurance policy covering the minimum amount required by law.

This communication is from a debt collector. Any information obtained can be used for the purpose of collecting a debt. However, if you are in an active bankruptcy case or your debt has been discharged in bankruptcy, this notice is for informational purposes only and is not a demand for payment or an attempt to collect a debt for which your personal liability has been discharged in bankruptcy.

LM023 009  PO V10

**SUMMARY** Here is a summary of your modified mortgage.

**NEW/UNPAID PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** If interest rate is changing: The interest rate on your modified loan will be adjusted as noted in the attached Loan Modification Agreement in Section 2. If interest rate is not changing: The interest rate on your modified loan will not be adjusted. As a result, the existing interest rate on your mortgage loan will be applied to your modified loan as noted in the attached Loan Modification Agreement.

**TERM EXTENSION.** To reduce your mortgage payment, we may extend the term of your mortgage. If so, this means we will spread your payments over a longer period.

**ESCROW ACCOUNT.** Your modified monthly mortgage payments, as specified in the terms of your Loan Modification Agreement, will include an escrow amount (if required). Escrow items could include, but are not limited to the following: Property taxes, insurance (homeowner's insurance, hazard insurance and/or flood insurance), and homeowner's association dues. Due to this, your modified monthly mortgage payment may change if your property taxes and insurance premiums or other escrowed expenses change. Based on the investor's requirements and federal regulations, and the specific homeowner assistance program which you qualify for, you may be required to establish an escrow account, as part of the terms of your Loan Modification Agreement, even if you did not have an escrow account before. In this instance, any prior waiver of escrows by your lender is no longer in effect. Your initial monthly escrow payment will be $215.96. This amount is not included in the loan payment noted in Section 2 of the enclosed Loan Modification Agreement; you must remit this amount separately.

**PAYMENT TERMS.** The enclosed Loan Modification Agreement includes your monthly principal and interest payment amount showing your payment for your modified loan after the trial period. Please note the amount shown on the Loan Modification Agreement does not reflect any applicable escrows.  Be sure to include the escrows in your modified monthly mortgage payment. Please Note:  Your modified monthly payment may change if your property taxes and insurance premiums or other escrowed expenses change.

**FEES.** There are no fees or other charges for this modification.

**COSTS.** Loss mitigation options may have costs associated with them that you may be responsible for after completion of loss mitigation. Examples of these costs include title searches, appraisals and valuations. The costs may vary depending on the loan information, geographic area, etc. Please contact us for information on costs that may be associated with your loss mitigation evaluation.

**LOAN MODIFICATION AGREEMENT.** Please read the enclosed Loan Modification Agreement carefully and make sure that you understand it. If you have any questions, please contact us at 855-622-3194.

Loan No.: 0141769877

# Borrower and Notary Checklist

Please carry this sheet with you when you have your documents notarized. This checklist is being provided to ensure that your loss mitigation documents are correctly executed. If any of the following steps are not completed, or are completed incorrectly, the documents will be returned to you for correction and/or completion.

- Borrower(s) must sign their name(s) exactly as the printed line below the signature line.
- County, State and date information completed (if applicable) on Borrower's Acknowledgment for each set of documents.
- Notarization date written in by Notary Public when notarizing Borrower's Acknowledgment for each set of documents.
- Notary Public's signature and title written in by Notary Public when notarizing Borrower's Acknowledgment for each set of documents
- Notary Public's stamp and/or seal placed on Borrower's Acknowledgment when notarizing each set of documents.
- Commission Expiration Date of Notary Public written in on Borrower's Acknowledgment for each set of documents, if required.
- **\*\*DO NOT HAVE DOCUMENTS NOTARIZED BY A FAMILY MEMBER OR A FOREIGN NOTARY\*\***

- **Witness Signatures**

Certain states require witness(es) to your signature. If witness signatures are required on your loan documents, please verify that each witness has signed and printed/typed their name under the signature as indicated.   **\*\*BORROWERS CANNOT WITNESS THEIR OWN SIGNATURES. \*\***

**\*\*WITNESS SIGNATURES MUST BE FROM NON-RELATED, DISINTERESTED THIRD PARTIES.\*\***

**NOTE**:  The Lender's Acknowledgment portion of the **loan documents** will be completed by the Lender and **SHOULD NOT** be notarized by your notary public.

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

_____[Space Above This Line For Recording Data]_____
Loan No. ▇▇▇▇▇▇▇                                                                                               VA Case No.: ▇▇▇▇2662
Investor Loan No. ▇▇▇▇▇▇▇
MERS No.: 1004247 1000373888 7                                                                MERS Phone: 1-888-679-6377

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

      This Loan Modification Agreement ("Agreement"), made this 31st day of August, 2021, between GEORGE A CALCUT and GERI M CALCUT, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP ("Borrower/Grantor") and Paramount Residential Mortgage Group, Inc. , whose address is 425 Phillips Blvd, Ewing, New Jersey 08618 ("Lender/Grantee"), and Mortgage Electronic Registration Systems, Inc. ("MERS") ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated April 17th, 2020, granted or assigned to Mortgage Electronic Registration Systems, Inc. as beneficiary of record (solely as nominee for Lender and Lender's successors and assigns), P.O. Box 2026, Flint, Michigan 48501-2026 and recorded on April 22nd, 2020, in Mortgage Book N/A, Page N/A, Instrument No. 20200342952, Official Records of MARICOPA County, Arizona, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in said Security Instrument and defined therein as the "Property," located at 6652 E VIRGINIA STREET, MESA, Arizona 85215,

Loan No.: 

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of November 1st, 2021, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 255,621.04, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.375%, from October 1st, 2021. Borrower promises to make monthly payments of principal and interest of U.S. $ 1,130.09, beginning on the 1st day of November, 2021, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.375% will remain in effect until principal and interest are paid in full. If on October 1st, 2051, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Loan No.: ███████

    5.    Borrower understands and agrees that:
    (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
    (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.
    (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
    (d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.
    (e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.
    (f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

    Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

    By checking this box, Borrower also consents to being contacted by text messaging ⭕.

    (g)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
    6.    If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.
    7.    Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay

Loan No.: █████████

directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

_____          _____(Seal)
Date                                      GEORGE A CALCUT                –Borrower


_____          _____(Seal)
Date                                      GERI M CALCUT                  –Borrower


_____          _____(Seal)
Date                                                                     –Borrower


_____          _____(Seal)
Date                                                                     –Borrower

Loan No.: █████

# BORROWER ACKNOWLEDGMENT

State of _____ §
§
County of _____ §

On this_____day of _____ ,_____, before me, _____ *[name of notary]*, a Notary Public in and for said state, personally appeared   GEORGE A CALCUT and GERI M CALCUT

*[name of person acknowledged]*, known to me to be the person who executed the within instrument, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

(Seal)

_____
Notary Signature

_____
Type or Print Name of Notary

Notary Public, State of_____

My Commission Expires:_____

Loan No.: ███

_____
                                                -Date

<u>Paramount Residential Mortgage Group, Inc.</u>
                                                -Lender

By: _____

Printed/Typed Name: _____

Its: _____

## LENDER ACKNOWLEDGMENT

State of                         §
                                     §
County of                    §

On this_____day of _____, _____, before me, _____*[name of notary]*, a Notary Public in and for said state, personally appeared _____, _____ of Paramount Residential Mortgage Group, Inc.
                                                                                                                                     , Lender, personally known to me to be the person who executed the within instrument on behalf of said entity, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

(Seal)                                                                  _____
                                                                                                     Notary Signature

                                                                 _____
                                                                Type or Print Name of Notary

                                                                Notary Public, State of_____

                                                               My Commission Expires:_____

Loan No.: ███

_____
                                -Date

<u>Mortgage Electronic Registration Systems, Inc.</u>
as nominee for Lender, its successors and        -MERS
assigns

By: _____

Printed/Typed Name:_____

Its: <u>Assistant Secretary</u>_____

# MERS ACKNOWLEDGMENT

State of                             §
                                     §
County of                            §

  On this_____day of _____, _____, before me, _____*[name of notary]*, a Notary Public in and for said state, personally appeared _____ , Assistant Secretary of Mortgage Electronic Registration Systems, Inc., as nominee for Lender, its successors and assigns, personally known to me to be the person who executed the within instrument on behalf of said entity, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

(Seal)
                  _____
                                   Notary Signature

                  _____
                  Type or Print Name of Notary

                  Notary Public, State of_____

                  My Commission Expires:_____

Loan No.: 

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____  -Borrower  _____  -Borrower
GEORGE A CALCUT                                GERI M CALCUT

_____  -Borrower  _____  -Borrower

_____  -Borrower  _____  -Borrower

Loan No.: 

# CORRECTION AGREEMENT

**Borrower(s):** GEORGE A CALCUT and GERI M CALCUT   **Property:** 6652 E VIRGINIA STREET, MESA, Arizona 85215

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

**"Borrower"** is GEORGE A CALCUT and GERI M CALCUT.

**"Lender"** is Paramount Residential Mortgage Group, Inc.
, and its successors or assigns.
**"Loan"** means the debt evidenced by the Note and all sums due under the Security Instrument.
**"Note"** means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
**"Security Instrument"** means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $255,621.04 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

**REQUEST BY LENDER:** Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

## ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.

_____  
GEORGE A CALCUT            -Borrower (Date)

_____  
GERI M CALCUT              -Borrower (Date)

_____  
                           -Borrower (Date)

_____  
                           -Borrower (Date)

_____  
                           -Borrower (Date)

_____  
                           -Borrower (Date)

Loan No.: ▬

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

_____
GEORGE A CALCUT            -Borrower (Date)

_____
GERI M CALCUT              -Borrower (Date)

_____
                           -Borrower (Date)

_____
                           -Borrower (Date)

_____
                           -Borrower (Date)

_____
                           -Borrower (Date)

ATTORNEY SELECTION NOTICE -MULTISTATE                               Page 1 of 1