WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Calcut, *et al.*, | No. CV-22-01215-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Paramount Residential Mortgage Group Incorporated, *et al.*, | |
| Defendants. | |

At issue is Plaintiffs George and Geri Calcut's Motion for Partial Summary Judgment & Memorandum of Law in Support Thereof (Doc. 46, "Pls.' MSJ") to which Defendants Paramount Residential Mortgage Group, Inc. ("PRMG"), and Cenlar FSB filed an Opposition (Doc. 65) and Plaintiffs filed a Reply (Doc. 69). Also at issue is Defendants' Motion for Summary Judgment (Doc. 50, "Defs.' MSJ") to which Plaintiffs filed an Opposition (Doc. 63) and Defendants filed a Reply (Doc. 67). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court finds that Defendants are entitled to summary judgment.

**I.    BACKGROUND**

In 2020, Plaintiffs obtained a mortgage loan from Defendant PRMG. The loan was sub-serviced by Defendant Cenlar and guaranteed by the Department of Veterans Affairs ("VA"). Eventually, the loan became eligible for forbearance under Section 4022 of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. *See* 15 U.S.C. § 9056.

Plaintiffs requested and received forbearance, which, after two approved extensions, was scheduled to run through August 2021. (Docs. 51-5, 51-6, 51-7.)

On May 11, 2021, Defendants sent Plaintiffs a letter explaining "several mortgage assistance options that may be available to [them] after the forbearance period." (Doc. 45-4 at 30.) Later that month, Mr. Calcut communicated to Cenlar that he may be interested in ending the forbearance early and beginning a streamlined loan modification. (Doc. 45-4 at 35–37.)

On June 1, 2021, Defendants sent Plaintiffs a letter stating that they had been approved for a VA Disaster Modification with a three-month trial period plan. (Doc. 51-8.) As the letter explained, this modification would increase Plaintiffs' interest rate and monthly principal payments. (Doc. 51-8 at 6.) The letter also stated that Plaintiffs were "un-evaluated" for any other type of modification or program. (Doc. 51-8 at 3–4.) Plaintiffs began completing the trial period payments.

Meanwhile, Cenlar erroneously reported to the credit bureaus that Plaintiffs' loan was delinquent for the month of July 2021. Mr. Calcut submitted a complaint to the Consumer Financial Protection Bureau ("CFPB") on July 26, 2021, and ten days later, Defendants acknowledged the error in a letter. (Docs. 45-5 at 39–44.) On August 16, 2021, Cenlar contacted the credit bureaus to correct the errant reporting. (Doc. 51-12.) But Plaintiffs allege that by then, their credit scores suffered, they could not increase their credit lines, and Mrs. Calcut's credit card was cancelled.

On September 10, 2021, Mr. Calcut submitted another complaint to the CFPB, this time asking the CFPB to determine whether he should accept the permanent loan modification and to assure him that PRMG's offer was "legitimate" and in compliance with the CARES Act. (Doc. 45-5 at 47–50.) Five days later, Plaintiffs accepted the permanent modification by signing the loan modification agreement. (Doc. 51-10.) On October 26, 2021, Defendants sent Plaintiffs a letter in response to the September complaint explaining, in sum, that Mr. Calcut was offered and agreed to the terms of the VA Disaster Modification plan. (Doc. 45-5 at 52.)

In July 2022, Plaintiffs brought this suit alleging that Defendants: (1) violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"); (2) violated the Arizona Consumer Fraud Act, A.R.S. 44-1521, *et seq*. ("ACFA"); and (3) committed negligent performance of an undertaking. (Doc. 1-3, "Compl.") Plaintiffs seek summary judgment on only the RESPA claim. Defendants seek summary judgment on all claims. The Court will address both motions.

## II.  LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III.    ANALYSIS

### A.    The RESPA Claim

Both parties move for summary judgment on the RESPA claim. The RESPA imposes several obligations on mortgage loan servicers, two of which are central to Plaintiffs' claim. First, it provides that "[a] servicer of a federally related mortgage shall not . . . fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C). And second, the Act prohibits a servicer from "fail[ing] to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of [the RESPA]." 12 U.S.C. § 2605(k)(1)(E).

Plaintiffs allege three violations under subsection (C): (1) Defendants breached their duty to "take timely action to avoid foreclosure"; (2) Defendants failed to offer Plaintiffs all available loss mitigation options instead of "steering" them toward the VA Disaster Modification; and (3) Defendants breached their duty "to take timely and appropriate action related to the [errant] credit reporting." (Compl. ¶¶ 69–71.)

In both motions for summary judgment, the parties focus on whether Defendants breached a "standard servicer's duties" and whether their actions qualify as "error." (Pls.' MSJ at 4–14; Defs.' MSJ at 5–7.) But it is not necessary to reach those questions to dispose of Plaintiff's allegations. The fatal flaw in Plaintiffs' arguments seems to be rooted in a misreading of subsection (C) that would have it impose a duty on servicers to correct certain errors. The plain language of this subsection, however, mandates only that a servicer "*take timely action to respond* to a borrower's requests to correct [certain] errors." 12 U.S.C. § 2605(k)(1)(C) (emphasis added). Thus, subsection (C) does not require a

servicer to abide by standard servicer's duties or correct errors relating to those duties, but only to respond timely to certain requests.

Accordingly, Plaintiffs' first allegation fails as a matter of law because subsection (C) does not require Defendants to "take timely action to avoid foreclosure."[1] Similarly, Plaintiffs' second allegation fails because nothing in subsection (C) requires Defendants to offer Plaintiffs "all loss mitigation options." Indeed, as Defendants aptly point out, the CFPB has expressly declined to impose "a duty on servicers to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a). (Defs.' MSJ at 6.) Plaintiffs respond that this point mischaracterizes their argument; they do not argue that Defendants had a duty to offer a specific loss mitigation option, but that Defendants had a duty to evaluate Plaintiffs for all loss mitigation options available to them. (Doc. 63 at 4–5.) Subsection (C), however, does not impose either duty.

Plaintiffs' third theory under subsection (C) is that Defendants failed "to take timely and appropriate action related to the [errant] credit reporting." (Compl. ¶ 70.) Plaintiffs argue that by incorrectly reporting the loan as delinquent, Defendants violated their standard servicer duties under the CARES Act, and Defendants failed to promptly correct the error after they received "notice" from Plaintiffs. (Pls.' MSJ at 5.)

First, as mentioned, subsection (C) does not require a servicer to abide by standard servicer duties. Furthermore, the word "appropriate" appears nowhere in subsection (C). The subsection mandates timely responses to requests, but it is not concerned with the propriety of those responses. Moreover, the subsection requires timely responses only to "a borrower's requests to correct errors." 12 U.S.C. § 2605(k)(1)(C). Plaintiffs have identified no evidence in the record of such a request. Although Plaintiffs cite their CFPB complaint to show that they provided Defendants "notice," nothing in the RESPA suggests that a complaint to a third party constitutes a "request" within the meaning of subsection

---

[1] The Court also notes that Plaintiffs do not allege any foreclosure occurred, and they only briefly allege, without any factual support, that they "now face the real risk of foreclosure." (Compl. ¶ 71.)

- 5 -

(C).² Even if the complaint were a sufficient request, the subsection contemplates "requests to correct errors relating to . . . standard servicer's duties," and Plaintiffs fail to show that credit reporting errors are such errors. Plaintiffs argue that the CARES Act prohibited such reporting, and thus Defendants breached "their standard servicing duties under the CARES Act." (Pls.' MSJ at 7–8.) But Plaintiffs fail to explain how duties imposed by the CARES Act are "standard servicer's duties." And nothing in the RESPA or in the CFPB's regulations suggests that credit reporting errors relate to a standard servicer's duties.³ *See* 12 C.F.R. § 1024.35(b). Accordingly, this allegation, like Plaintiffs' others under 12 U.S.C. § 2605(k)(1)(C), fails as a matter of law.

Plaintiffs' final RESPA allegation is that Defendants violated 12 U.S.C. § 2605(k)(1)(E), which requires servicers to comply with obligations set forth in CFPB regulations. (Compl. ¶ 68.) In their motion, Plaintiffs allege violations of several regulatory provisions.

Plaintiffs first point to 12 C.F.R. § 1024.41(c)(1)(i), which requires servicers to "[e]valuate the borrower for all loss mitigation options available to the borrower." (Pls.' MSJ at 12.) They also cite 12 C.F.R. § 1024.41(c)(1)(ii), which requires servicers to notify borrowers of their right to appeal the denial of a loss mitigation option. (Pls.' MSJ at 12.) Plaintiffs allege that Defendants failed to comply with either provision. However, these provisions only apply "if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale." 12 C.F.R. § 1024.41(c)(1). Plaintiffs proffer no evidence of such an application. Defendants notified Plaintiffs several times that their forbearance plan was "based on information that [Plaintiffs] provided verbally or through an evaluation of an incomplete mortgage assistance application," each time reminding

---

² PRMG also instructed Plaintiffs to send all qualified written requests and notifications of error directly to PRMG. (Doc. 45-4 at 73–74.)

³ One court has commented that "Congress and the [CFPB] are surely well-aware that credit reporting may occur, yet this activity is not expressly identified anywhere as a 'servicing duty' or servicing 'error.' This may be because the Fair Credit Reporting Act is a remedial statutory scheme that covers credit reporting errors." *Richissin v. Rushmore Loan Mgmt. Servs., LLC*, No. 20 CV 871, 2020 WL 7024848, at *4 (N.D. Ohio Nov. 30, 2020).

them that they had "the option to submit a complete mortgage assistance application to receive an evaluation for all options." (Doc. 45-4 at 15, 24, 32.) Plaintiffs proffer no evidence that, when they chose to pursue a modification, they submitted a "complete loss mitigation application more than 37 days before a foreclosure sale," such that the protections under 12 C.F.R. § 1024.41(c)(1) would apply.

Plaintiffs also assert that Defendants breached their duties under 12 C.F.R. § 1024.38(b)(1)(i)–(iii), (2)(i), and (2)(v). (Pls.' MSJ at 12.) These provisions set forth certain objectives, and 12 C.F.R. § 1024.38(a) requires servicers to "maintain policies and procedures that are reasonably designed to achieve [those] objectives." Thus, in arguing that Defendants breached their duties under 12 C.F.R. § 1024.38(b), Plaintiffs misinterpret the regulation. Subsection (b) does not impose any duties. Rather, subsection (a) imposes the duty to maintain policies and procedures that are reasonably designed to achieve the objectives in subsection (b). Plaintiffs do not challenge Defendants' policies or procedures in their motion. And in their complaint, Plaintiffs' only reference to Defendants' policies and procedures is that "Cenlar knows it has . . . credit reporting problems but failed to put in proper policies, practices, and procedures to prevent the negative consequences of its actions," which is not an objective under subsection (b). (Compl. ¶ 50.) Plaintiffs' allegations under 12 C.F.R. § 1024.38(b) therefore fail as a matter of law.

Plaintiffs proffer no evidence from which a reasonable jury could find that Defendants violated 12 U.S.C. § 2605(k)(1)(C) or (E). Therefore, the Court will deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment as it relates to the RESPA claim.

**II.     The ACFA Claim**

Defendants also move for summary judgment on the ACFA claim. Plaintiffs allege that (1) Defendants violated the ACFA by performing a "bait and switch" on Plaintiffs to induce them into initiating the VA Disaster Modification despite there being more favorable loss mitigation options available to them; (2) Defendants violated the ACFA by concealing that more favorable options existed before Plaintiffs finalized the VA Disaster

Modification; and (3) PRMG violated the ACFA by concealing Cenlar's role in servicing the loan. (Compl. ¶¶ 77–82.)

As a consumer protection statute, the ACFA is "a broad act intended to eliminate unlawful practices in merchant-consumer transactions." *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992) (internal citation omitted). The ACFA prohibits any "deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." A.R.S. § 44-1522. "The elements of a private cause of action [under the ACFA] are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Holeman*, 803 F. Supp. at 242.

Defendants argue in part that Plaintiffs cannot prevail on their ACFA claim because communications regarding loan modifications are not the "sale or advertisement of merchandise." (Defs.' MSJ at 11.) Plaintiffs respond that they are. (Doc. 63 at 10–11.) The parties cite opposing lines of cases, each of which stem from *Villegas v. Transamerica Financial Services, Inc.*, 708 P.2d 781 (Ariz. Ct. App. 1985). In *Villegas*, the borrowers defaulted on their loan payments, and the lender offered them a new loan but allegedly omitted material facts. *Villegas*, 708 P.2d at 782–83. In determining whether the ACFA applied, the Arizona Court of Appeals held that "the lending of money is subject to the provisions of the [ACFA]" because a loan is "the sale of the present use of money on a promise to repay in the future," and "an oral inducement to take a loan, in which material facts are omitted, would involve an advertisement" under the ACFA. *Id.* at 102.

As Plaintiffs argue, this Court has cited *Villegas* to state that "any oral negotiations to restructure a consumer loan have been considered an 'advertisement' within the meaning of the [ACFA]." *Narramore v. HSBC Bank USA, N.A.*, No. 09-CV-635-TUC-CKJ, 2010 WL 2732815, at *13 (D. Ariz. July 7, 2010). Relying on *Narramore*, this Court later held

that the ACFA "will apply to actions in connection with the origination of a loan or a loan modification." *Bergdale v. Countrywide Bank FSB*, No. CV-12-8057-PCT-GMS, 2012 WL 4120482, at *5 (D. Ariz. Sept. 18, 2012). And following *Bergdale*, this Court eventually concluded that the ACFA applies to actions in connection with a loan modification even if the defendants did not offer the plaintiff a new loan. *Myrick v. Bank of Am. Corp.*, No. CV-11-00824, 2013 WL 12097453, at *3 (D. Ariz. May 30, 2013).

On the other hand, Defendants cite a slightly newer string of cases, starting with *Rich v. BAC Home Loans Servicing LP*, No. CV-11-00511-PHX-DLR, 2014 WL 7671615 (D. Ariz. Oct. 9, 2014), *aff'd sub nom. Rich v. Bank of Am., N.A.*, 666 F. App'x 635 (9th Cir. 2016). The facts in *Rich* did not involve an offer for a new loan but rather "concern[ed] communications surrounding potential offers to modify an already existing debt." *Rich*, 2014 WL 7671615, at *10. This Court acknowledged that money lending is a "sale of merchandise" under *Villegas*, but it held that offers to modify an existing debt "[do] not concern the sale or advertisement of merchandise, but instead concern[] discussions about modifying the payment schedule for merchandise previously purchased." *Id.* It thus concluded that the ACFA does not apply. *Id.* This Court has followed *Rich* in several cases since, including in a case decided after the parties briefed the motions at issue. *See Rozich v. MTC Fin. Inc.*, CV-23-00210, 2023 WL 7089801, at *4 (D. Ariz. Oct. 26, 2023); *Zoldessy v. MUFG Union Bank, N.A.*, CV-20-08329-PCT-SPL, 2021 WL 1733398, at *3 (D. Ariz. May 3, 2021); *Jahn v. Caliber Home Loans Inc.*, No. CV-18-02244-PHX-DLR, 2019 WL 7049105, at *3 (D. Ariz. Oct. 25, 2019), *aff'd*, 840 F. App'x 975 (9th Cir. 2021).

Although the cases cited by Plaintiffs eventually reached the conclusion that the ACFA will apply to loan modifications even without an offer of a new loan, the Court declines to follow those cases because their reasoning is rooted in *Villegas*, and the *Villegas* court held that the ACFA applied because defendant offered the plaintiffs a new loan. *See Villegas*, 708 P.2d at 782–83. The Court is instead persuaded by the cases Defendants cite. Like *Rich* and its progeny, this case does not involve the solicitation of a new loan, but rather the possibility of modifying an existing debt. Defendants therefore did not act "in

1 connection with the sale or advertisement of merchandise" within the meaning of the
2 ACFA, and the claim fails as a matter of law. The Court will grant Defendants' motion on
3 the ACFA claim.

**III.   The Negligent Performance of an Undertaking Claim**

Plaintiffs' final claim is for negligent performance of an undertaking. Specifically, Plaintiffs allege that Defendants "induced the Plaintiffs to end their CARES Act forbearance by promising them a loss mitigation option which would allow them to continue making their former payments and the payments not made during the forbearance period would be put on the back of the loan." (Compl. ¶ 85.) Plaintiffs further allege that, after they relied on Defendants' promise and gave notice to exit the forbearance, Defendants informed Plaintiffs that only a materially different loan modification was available to them. (Compl. ¶¶ 86–87.) Plaintiffs also allege that Defendants failed to notify them of more favorable loan modifications that arose before they finalized the VA Disaster Loan Modification. (Compl. ¶ 88.) And Plaintiffs allege harm in the form of increased interest and principal payments, which would have been avoided but for Defendants' negligence. (Compl. ¶ 89.)

Arizona recognizes negligent performance of an undertaking as it appears in the Second Restatement of Torts. *Steinberger v. McVey ex rel. Cnty. of Maricopa*, 318 P.3d 419, 431 (Ariz. Ct. App. 2014). The Restatement provides that an individual may be "subject to liability . . . for physical harm resulting from his failure to exercise reasonable care to perform" an undertaking. Restatement (Second) of Torts § 323 (1965). Although the Restatement contemplates only physical harm, the Arizona Supreme Court extended this cause of action to apply to economic harm as well. *McCutchen v. Hill*, 710 P.2d 1056, 1059 (1985). In cases since *McCutchen*, state and federal courts have determined that this cause of action is applicable, under certain circumstances, to loan modification procedures. *See, e.g.*, *Steinberger*, 318 P.3d at 431 (citing state and federal cases); *Martinez v. Cenlar FSB*, 13-CV-00589, 2014 WL 4354875, at *9–10 (D. Ariz. Sept. 3, 2014) (citing additional

federal cases). The parties rely on those cases to argue whether the cause of action is cognizable here.

Recently, however, the Arizona Supreme Court "disavow[ed] *McCutchen* to the extent it interpreted [Restatement (Second) of Torts] § 323 to encompass purely economic harm." *Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 509 P.3d 386, 391 n.1 (Ariz. 2022). Accordingly, under Arizona law, a plaintiff alleging negligent performance of an undertaking must allege some sort of physical harm. Plaintiffs here do not allege or proffer evidence of any harm that is not purely economic. (Compl. ¶ 89.) Therefore, Plaintiffs' claim fails as a matter of law, and the Court will grant Defendants' motion on this claim.

**IT IS THEREFORE ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 50).

**IT IS FURTHER ORDERED** denying Plaintiffs George and Geri Calcut's Motion for Partial Summary Judgment & Memorandum of Law in Support Thereof (Doc. 46).

**IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion to Exclude or Strike Defendants' Expert Disclosure of Non-Retained Expert Raymond Crawford (Doc. 47), Defendants' Motion to Exclude Expert Testimony from Thomas Tarter (Doc. 49), Defendants' Motion to Exclude Testimony from Christy Hancock (Doc. 52), and Defendants' Motion to Exclude Expert Testimony from Terri Wilson (Doc. 53).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and to close this case.

Dated this 22nd day of January, 2024.

Honorable John J. Tuchi
United States District Judge